

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DARRYL WASHINGTON </br></br> Petitioner, </br></br> v. </br></br> GERARDO ACEVEDO, Warden, </br></br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> No. 08 C 3521 </br></br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Darryl Washington ("Petitioner") is serving a 66-year sentence for first degree murder, aggravated battery with a firearm, and home invasion. He has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), raising claims of ineffective assistance of counsel and a Fourth Amendment claim challenging his arrest. (R. 1, Pet.) Warden Gerardo Acevedo ("Respondent") argues that Petitioner's ineffective assistance of counsel claims are procedurally defaulted or fail on the merits and that he was had a "full and fair opportunity" to litigate the Fourth Amendment claim. (R. 13, Resp't Answer.) For the reasons stated below, the Petition is denied.

## RELEVANT FACTS [1]

On December 5, 1993, Pierre Willhite ("Willhite") and Elvis Valentin ("Valentin") were

---

[1] The facts are taken from the Petition and portions of the state court record Petitioner and Respondent have provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The state court's determination of factual issues is presumed correct unless Petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1

involved in an argument in front of Valentin's apartment at 2051 West Division Street in Chicago. (R. 1, Pet., App. B at 2.) During the argument Valentin punched Willhite in the face. (*Id.*) Willhite then left the apartment building, saying, "I'll be back." (*Id.*)

Edmund Green ("Green") and Edgar Perez ("Perez"), who were on the second floor of the building, heard the argument. (*Id.*) After the argument, Perez and Green went to a friend's house. (*Id.*) While they were there, they received a call from Valentin asking them to come back. (*Id.*) As they approached the apartment building, they saw three black men get out of a car and enter the building. (*Id.*) As Green and Perez walked up the stairs of the building, the three men came down the stairs making eye contact with them but not speaking to them. (*Id.*) As they entered Valentin's apartment, Green told Perez that one of the men was named "Gooch." (*Id.*)

Subsequently, there was a knock on the door at Valentin's apartment. (*Id.*) Perez saw Green open the door and heard him say that Valentin was not home. (*Id.*) Then, the person at the door shoved it open and fired a gun, hitting Green above his left eye. (*Id.* at 2-3.) Perez then ran into Valentin's room. (*Id.* at 3.) When Perez returned to the living room, the offenders were gone. (*Id.*) Perez saw Green lying in a pool of blood and saw that Luis Cruz ("Cruz"), who was also in the apartment, had been shot in the leg. (*Id.*) Green died as a result of the gunshot wound to his head and another to his back. (*Id.*) Another individual that was in the apartment, Sylvia Ramos ("Ramos"), testified that after the shooting began, she rushed her daughter into the pantry, and saw a man enter the apartment and fire in her direction. (R. 14, Record, Ex. B, Tr. at C159-60.) Detective David March ("Detective March") testified that he was assigned to investigate the homicide of Green. (R. 1, Pet., App. B at 3.) On December 5, 1993, he interviewed witnesses and was given a description of three men involved in the crime. (*Id.*) Valentin

2

identified one of the offenders as someone named "Pierre." (*Id.*) Later, Detective March interviewed Cruz and Perez about the incident. (*Id.*) Perez testified that he told Detective March that he recognized the shooter from the neighborhood. (*Id.*) Cruz said that shortly before the shooting, Green told him that one of the men was nicknamed "Gooch" and that he has since learned that the other two were named "Scooter" and "Pierre." (*Id.* at 3-4.) Cruz stated that all three men frequented Wicker Park. (*Id.* at 4.)

Detective March determined that "Pierre" was Pierre Willhite. (*Id.* at 3.) He also spoke with a Wicker Park field house employee, who gave him a description of Gooch and Scooter. (*Id.* at 4.) Detective March testified that on December 18, 1993, he questioned police officers in the Wicker Park area and was told that "Scooter" was a nickname for Petitioner. (*Id.*) That same day Petitioner's photograph was shown to Ramos. (*Id.* at 4-5.) Ramos testified that she confirmed that Petitioner looked like the man who had fired a gun at her, but stated that "she would have to see him in person to be sure." (R. 14, Record, Ex. B, Tr. at C159-60.) In addition, Perez identified Willhite from a photo array but could not identify Petitioner except to say that he was Willhite's friend. (*Id.* at 5.)

On January 20, 1994, after receiving a tip, officers went to the Wicker Park field house where they identified Petitioner based on his clothing and arrested him following a foot-chase.[2] (*Id.*) At the police station, Ramos identified Petitioner as one of the individuals who came into the apartment that day and began shooting. (*Id.*)

In September 1997, following a jury trial, Petitioner was convicted of first degree murder,

---

[2] Prior to trial, Petitioner made a motion to quash his arrest and suppress his out-of-court identification, however, after hearing testimony from the officers, the court found that the police had probable cause to arrest him. (*Id.* at 5-6.)

home invasion, and aggravated battery with a firearm. (*Id.* at 1.) He was sentenced to 66 years in prison. (*Id.*) Petitioner appealed, arguing that the police lacked probable cause for his arrest and that he was denied a fair trial because of the prosecutor's highly inflammatory closing argument. (R. 14, Record, Ex. H.) The appellate court affirmed Petitioner's conviction. (R. 1, Pet., App. B at 19.) Petitioner then filed a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied. (R. 14, Record, Exs. J-L.) Petitioner then petitioned the United States Supreme Court for a writ of certiorari, which was also denied. (R. 1, Pet. at 2.)

On June 5, 2000, Petitioner filed a *pro se* post-conviction petition in state court, and requested the appointment of counsel. (*Id.*, App. C-E.) Petitioner alleged that trial counsel was ineffective for failing to investigate or develop evidence regarding other possible suspects and that appellate counsel was ineffective for failing to challenge his arrest and the in-court identification by Ramos. (*Id.*, App. E.) In addition, Petitioner argued that his sentence of 66 years was unconstitutional. (R. 14, Record, Ex. M.) With the assistance of counsel, Petitioner filed a supplemental post-conviction petition, which refined his claim that trial counsel was ineffective. (R. 1, Pet. at App. F.) The State moved to dismiss. (R. 14, Record, Ex. N.) On October, 24, 2005, the trial court granted dismissal. (R. 1, Pet., App. G.) Petitioner then appealed to the Illinois Appellate Court, which affirmed finding that there were "no issues of arguable merit to be asserted on appeal."[3] (R. 14, Record, Ex. R.) On January 3, 2008, Petitioner filed a PLA to the Illinois Supreme Court, again raising the aforementioned ineffective assistance

---

[3] The State Appellate Defender, who was appointed to represent Petitioner, filed a motion for leave to withdraw based on his conclusion that an appeal was frivolous. (R. 14, Record, Ex. P.) Petitioner opposed the motion, however, leave to withdraw was granted by the appellate court. (*Id.*, Exs. Q-R.)

4

of trial and appellate counsel arguments. (*Id.*, Ex. S.) On March 26, 2008, the PLA was denied. (R. 1, Pet., App. H.)

## PROCEDURAL HISTORY

On June 12, 2008, Petitioner filed the instant Petition with this Court raising four claims for relief.[4] (R. 1, Pet.) Petitioner raises two ineffective assistance claims based on trial counsel's failure to: (1) subpoena doctors and medical records to demonstrate that he could not have participated in the crime due to his previous medical injuries, and (2) investigate other individuals who may have committed the crime. (*Id.* at 5.) Petitioner also raises an ineffective assistance claim against appellate counsel based on counsel's failure to challenge the admissibility of Ramos's in-court identification. (*Id.* at 6.) Finally, Petitioner brings a Fourth Amendment claim, alleging that his arrest was "unconstitutional and illegal" and that the trial court erred by denying his motion to quash the arrest. (*Id.*) Respondent argues that the Petition should be denied because the ineffective assistance claims are procedurally defaulted or fail on the merits and that Petitioner has had a "full and fair opportunity" to litigate the Fourth Amendment claim in state court. (R. 13, Resp't Answer at 12-31.) Petitioner has also filed a reply in support of his Petition. (R. 17, Pet'r Reply.)

## LEGAL STANDARDS

Under the Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief to prisoners in state court custody. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). The Court may grant habeas relief only if the state court's adjudication of a

---

[4] Respondent concedes that June 12, 2008, constitutes the date of filing and that the Petition is timely. (R. 13, Resp't Answer at 9.)

5

petitioner's constitutional claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. U.S.C. § 2254(d)(1); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Under this standard the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000).

A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "unreasonable application" clause of the AEDPA, the petitioner must demonstrate that the state court identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). A state court's decision must be "well outside the boundaries of permissible differences of opinion" to be objectively unreasonable. *Watson*, 560 F.3d at 690.

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was constitutionally ineffective in: (1) failing to subpoena doctors and medical records to demonstrate that due to his previous medical injuries he could not have participated in the crime, and (2) failing to investigate other individuals who may

have committed the crime. (R. 1, Pet. at 5.)

### a. Failure to Subpoena Doctors and Medical Records

Petitioner claims that injuries he suffered prevented him from committing the crimes which he was convicted. Petitioner alleges that on June 20, 1993, he was cut which resulted in approximately sixty stitches in his left arm. (R. 1, Pet. at 2-B.) In addition, on August 23, 1993, Petitioner alleges that he was shot in his right shoulder. (*Id.*) Petitioner claims that trial counsel was ineffective for failing to subpoena doctors and medical records to substantiate these injuries. (*Id.* at 5.) Petitioner argues that this evidence was "exculpatory" because it verified that he could not have been involved in the December 5, 1993, shooting of Green and Cruz. (*Id.* at 5.) Respondent argues that Petitioner's claim is procedurally defaulted. (R. 13, Resp't Answer at 16.)

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available in state court. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). This requires that the "operative facts and controlling legal principles of the federal claim be submitted to the state court," either on direct appeal or in a post-conviction proceeding. *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* (citation omitted). Although Petitioner argued that trial counsel was ineffective on direct appeal and in his post-conviction petition, his argument did not include the claim that trial counsel was ineffective for failing to subpoena records and witnesses related to his previous medical injuries. (*See* R. 1, Pet., App. E-F; *see also* R. 14, Record, Ex. S.) Petitioner's claim is therefore procedurally defaulted. *Gonzales*, 565 F.3d at 380; *see also Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (a

7

habeas petitioner procedurally defaulted one of his ineffectiveness of counsel claims even though he had raised ineffectiveness claims to the state courts based on other grounds.)

Nevertheless, a habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Gonzales*, 565 F.3d at 381. The Supreme Court defines "cause" sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). A fundamental miscarriage of justice occurs when a petitioner establishes that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.*

The state's failure to provide information that would substantiate a claim can establish "cause" sufficient to excuse a petitioner's default. *Crivens v. Roth*, 172 F.3d 881, 995-96 (7th Cir. 1999). Citing *Brady v. Maryland*, 272 U.S. 83 (1963), Petitioner argues that there was "cause" for his default because the "prosecutors, defense attorney, and Trial Judge" withheld the allegedly exculpatory medical records.[5] (R. 1, Pet. at 13-14.) Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon receipt violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Seventh Circuit has stated, "*Brady* requires

---

[5] Petitioner does not present a separate *Brady* claim as a basis for habeas relief. (*See* R. 1, Pet. at 5-6.) Even if the Court were to construe Petitioner's *Brady* argument as an independent basis for relief, it was never presented to the state courts, and it is therefore procedurally defaulted. *Gonzales*, 565 F.3d at 380.

8

disclosure only of exculpatory material known to the government *but not to the defendant.*" *United States v. Mahalick*, 498 F.3d 475, 478 (7th Cir. 2007) (emphasis in original). The Court finds that under the circumstances of this case, there is no *Brady* issue because even if the government was in possession of Petitioner's medical history (and this evidence was in-fact exculpatory), Petitioner was obviously aware of his previous medical injuries. *See id.* at 479; *see also United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996) (indicating that "the Government will not be found to have suppressed material information if the information is available to the defendant through the exercise of reasonable diligence."). Accordingly, the Court finds that Petitioner has not established "cause" sufficient to excuse his default.

Next, Petitioner argues that he is "actually innocent" and his conviction and imprisonment represent "a fundamental miscarriage of justice that would excuse the application of the procedural bar." (R. 1, Pet. at 12.) To establish actual innocence, a petitioner must support his allegation of constitutional error "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims "are rarely successful." *Id.* at 324.

Although Petitioner references "exculpatory" medical records from Cook County and Saint Elizabeth Hospitals, no records have been attached to the Petition. (*See* R. 1, Pet.) Petitioner's own account that his arms were "unusable" does not constitute "new reliable evidence," sufficient to establish actual innocence. *See Delo*, 513 U.S. at 324; *see also Hayes v.*

9

*Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence...."). Petitioner has not produced any "powerful evidence," therefore the Court has no basis to conclude that Petitioner's injuries occurring five and seven months earlier, prevented him from holding a gun and pulling the trigger on December 5, 1993.

Moreover, trial testimony revealed that Petitioner was playing basketball or at least "shooting the ball around" on December 5, 1993, the day of the incident, and that he had been participating in basketball games at the park during November 1993. (*Id.* at E57-64.) Although there was additional testimony that Petitioner could not use his arms (*see* R. 14, Ex. D, Tr. at E36-7, E123-34), the jury ultimately determined that the former testimony was more credible and found Petitioner guilty of the crimes. Accordingly, Petitioner's actual innocence claim fails and his procedural default will not be excused.

### b. Failure to Investigate Other Individuals

Petitioner further claims that trial counsel was constitutionally ineffective by failing to investigate or develop evidence of other possible suspects. (R. 1, Pet. at 5.) Specifically, Petitioner claims that counsel was ineffective for failing to investigate the arrests of Nayati Johnson ("Nayati"), Zuriel Johnson ("Zuriel"), and Robert Willhite ("Robert").[6] These individuals were found with a gun after the December 5, 1993, shooting, in a vehicle near the building where the incident took place. (R. 1, Pet., App. J, Police Reports.) Petitioner raised this ineffective assistance claim in his petition for post-conviction relief. (*Id.*, App. E-F.) The claim was dismissed by the trial court and the appellate court affirmed. (*Id.*, App. G; R. 14, Record,

---

[6] Robert was the brother of Willhite, Petitioner's co-defendant. (R. 1, Pet., App. F. at 4.)

Ex. R.) Respondent argues that Petitioner is not entitled to habeas relief on this claim because the Illinois courts' previous denial of the claim "was neither contrary to, nor an unreasonable application of, Supreme Court law." (R. 13, Resp't Answer at 16.)

The standard for evaluating an ineffective assistance claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must show that: (1) his attorney's representation fell outside "the wide range of reasonable professional assistance"; and (2) he was prejudiced by the attorney's deficient performance. *Strickland*, 466 U.S. at 687, 689. To satisfy the first prong, the petitioner must show that counsel made errors so serious that she was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To satisfy the second prong, the petitioner must demonstrate that there is a reasonable probability the result of the proceeding would have been different but for counsel's errors. *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Here, the Illinois trial court issued the last reasoned opinion of Petitioner's ineffective assistance claims and identified *Strickland* as the applicable standard. (R. 1, Pet., App. G at 6.) When reviewing a state court's application of *Strickland*, a federal habeas court does not determine whether the application of *Strickland* was incorrect, but rather whether the application was unreasonable, which is a "substantially higher threshold." *Knowles v. Mirzayance*, ---U.S.---, 2009 WL 746274, at *8 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Only a clear error in applying *Strickland* will support granting a writ of habeas corpus. *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

Petitioner claims his trial counsel was ineffective in failing to investigate the arrests of

11

Nayati, Zuriel, and Robert. (R. 1, Pet. at 2-B.) Under the *Strickland* standard, Petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced him. *Strickland*, 466 U.S. at 687; *Wrinkles v. Buss*, 537 F.3d 804, 812-13 (7th Cir. 2008). The Court's review of counsel's performance is "highly deferential," and Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). Furthermore, under *Strickland*, a lawyer's failure to investigate possible defenses may constitute deficient performance. *See Strickland*, 466 U.S. at 691; *Washington v. Smith*, 219 F.3d 620, 631 (7th Cir. 2000). However, "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). Counsel's decision not to call a witness is sound trial strategy where counsel reasonably determines "that the testimony the witness [] would give might on balance harm rather than help the defendant." *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (citations omitted).

Here, the Illinois trial court concluded that counsel's decision not to rely on the police reports or confront Nayati, Zuriel, and Robert was not "deficient," and instead constituted "good trial strategy." (R. 1, Pet., App. G. at 8.) Petitioner claims that the reports and witnesses would have implicated three other individuals in the December 5, 1993, shooting. (*Id.*, Pet., at 19.) The court, however, found that Petitioner failed to show how evidence related to the arrests of these individuals would "absolve him from guilt." (*Id.*, App. G. at 8.) Moreover, the state court found that evidence from the arrests of Nayati, Zuriel, and Robert would not be "inconsistent with the State's case." (*Id.*) The court determined that if presented, this evidence could indeed "inculpate" Petitioner because if Robert, Willhite's brother, possessed a gun allegedly used in the

12

shooting, thus making it even more probable that Willhite and Petitioner were involved in the crime. (*Id.*) This Court agrees, and finds that the state court's resolution of the claim was not an unreasonable application of *Strickland*. Petitioner's claim therefore fails.

Assuming *arguendo* that trial counsel's decision constituted deficient performance, the trial court also determined that the failure to present these witnesses did not prejudice Petitioner. (*Id.*) The court determined that Petitioner could not "show sufficient prejudice because there is not a reasonable probability the outcome of the trial would have been different if the jury had this evidence before them." (*Id.*) Again, the court determined that if presented with the evidence, the jury could have concluded that Robert was near the scene to "recover guns used at the crime scene or to provide 'back up'" to Willhite and Petitioner. (*Id.*) Additionally, evidence from the arrests of Nayati, Zuriel, and Robert, does nothing to contradict Ramos's in-court identification of Petitioner as the person who shot at her during the December 5, 1993, incident. (*See* R. 14, Record, Ex. B at C157.)

In short, the state court's determination that Petitioner was not prejudiced by counsel's failure to present this evidence was not objectively unreasonable, and therefore, Petitioner fails on the second *Strickland* prong. For these reasons, the Court denies Petitioner's claim.

## II. Ineffective Assistance of Appellate Counsel

Petitioner next claims that his appellate counsel was ineffective in failing to challenge the admissibility of Ramos's in-court identification.[7] (R. 1, Pet. at 6 .) Petitioner raised this claim in

---

[7] Petitioner also claims that appellate counsel was ineffective in failing to raise an actual innocence claim. (*See* R. 1, Pet. at 6.) A claim of actual innocence, however, is only properly brought in an Illinois post-conviction petition. *People v. Washington*, 665 N.E.2d 1330, 1337 (Ill. 1996). Therefore, appellate counsel could not have raised such an argument on direct appeal, and was not ineffective in failing to do so.

13

his petition for post-conviction relief, however, the claim was dismissed by the trial court and affirmed on appeal. (*Id.* at App. E, G; R. 14, Record, Ex. R.) Respondent argues that appellate counsel was not incompetent for failing to raise the issue, and that Petitioner was not prejudiced by counsel's failure to pursue this argument. (R. 13, Resp't Answer at 31.)

An ineffective assistance of appellate counsel argument is also subject to the *Strickland* standard. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). Petitioner must show that appellate counsel's performance was "unreasonably deficient" and that this inadequacy resulted in prejudice. *Id.* at 790. Petitioner must also show "there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal," if the claim had been presented to the appellate court. *Id.*

In resolving this claim, the state court found that "appellate counsel's assessment of the record and decision not to raise the issue of [P]etitioner's in-court identification" did not constitute ineffective assistance. (R. 1, App. G. at 10.) In addition, the state court determined that Petitioner failed to establish that had appellate counsel raised the issue, his conviction or sentence would have been reversed. (*Id.* at 11.) Again, the sole question for this Court is whether the appellate court's resolution of the claim was an objectively unreasonable application of *Strickland*. *Allen*, 555 F.3d at 600. Petitioner argues that counsel was ineffective in failing to allege as error on appeal the "bogus" in-court identification by Ramos. (R. 1, Pet. at 6.) The Supreme Court has stated that defense counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Where appellate counsel has presented some arguments and issues, but not others, "it is difficult to demonstrate that counsel

14

was incompetent." *Id.*

Here, the record does reflect that there was some confusion in Ramos's identification of Petitioner as the shooter. (*See* R. 14, Record, Ex. B, Tr. at C155-57.) Initially, Ramos identified Willhite as the shooter. (*Id.* at C155.) However, upon counsel's continued questioning, she testified that the man with whom she had seen arguing with Valentin (who she had previously identified as Willhite) was not the shooter. (*Id.* at C156.) She further testified that the shooter was in court wearing a "gray sweater and a white shirt." (*Id.* at C157.) The record reflects that Ramos was referring to Petitioner. (*Id.*)

Petitioner argues that Ramos's confusion resulted in a "bogus" identification that impugns its admissibility. (R. 1, Pet. at 18.) Ramos's confusion, however, does not affect the admissibility of the identification but goes to the weight of the evidence. *See McFowler v. Jaimet*, 349 F.3d 436, 456 (7th Cir. 2003)("the credibility and reliability of an eyewitness's in-court identification is a question for the finder of fact."). On cross-examination, defense counsel attempted to expose the inaccuracies and inconsistencies of Ramos's story. (*See* R. 14, Record, Ex. B, Tr. at C167-224.) The jury, however, made a determination that Ramos's identification was credible.

For these reasons, the Court finds that state court's resolution of the claim was not unreasonable. Accordingly, habeas relief on this claim is denied.

### III. Fourth Amendment Claim

Petitioner's final claim is that his arrest "was unconstitutional and illegal" in violation of the Fourth Amendment, and that it was erroneous for the trial judge to deny his motion to quash the arrest. (R. 1, Pet. at 6.) Petitioner argues that the police officers who arrested him "had no

reason to believe he was involved in the murder of Green," and therefore had no probable cause to arrest him. (R. 17, Pet'r Reply at 28-29.) Respondent argues that habeas relief should not be granted on this claim because Petitioner had a full and fair opportunity to litigate in state court. (R. 13, Resp't Answer at 12.)

The Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Seventh Circuit has explained that the presence of the following three elements establishes "full and fair litigation": "(1) [Petitioner] clearly apprised the state court of his Fourth Amendment claim along with the factual basis for the claim; (2) the state court carefully and thoroughly analyzed the facts; and (3) the court applied the proper constitutional case law to those facts." *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005). *Stone* requires only an opportunity for litigation, not a correct outcome. *Id.* at 998 ("[M]istakes in a state court's treatment of a petitioner's Fourth Amendment claim are not sufficient, in and of themselves, to surmount the *Stone* bar."). Only "egregious errors" by the state court will provide sufficient basis for allowing a Fourth Amendment claim to be relitigated in federal court. *Id.*

Petitioner argues that the Illinois courts "failed to carefully and thoroughly analyze the facts surrounding his arrest and apply the proper constitutional law to the facts." (R. 17, Pet'r Reply at 33.) This Court disagrees. First, Petitioner raised the same operative facts for his Fourth Amendment claim on direct appeal as he now asserts in the Petition. Specifically, Petitioner argued that under Illinois law, the police lacked probable cause to arrest him. (*See* R.

1, Pet., App. B at 10-12; R. 17, Pet'r Reply at 28-33.) Second, the state court thoroughly analyzed the factual basis for Petitioner's claim.[8] (*See* R. 1, Pet., App. B at 10-12.) Finally, the state court applied the proper constitutional law regarding probable cause. (*See id.*) The court recognized that under Illinois law, a determination of probable cause required an "examination of the totality of the circumstances." (*Id.* at 10.) The court found that Petitioner's arrest "was not based solely on information provided by an informant" and that "the information collectively known by the police in this case was sufficient to establish probable cause . . . ." (*Id.* at 12.)

Although Petitioner disagrees with the state court's ruling, he has not shown that the state court deprived him of a full and fair opportunity to litigate his Fourth Amendment claim. *See Miranda*, 394 F.3d at 997. Therefore, this claim is denied.

## CONCLUSION

For all of these reasons, the Petition for Writ of Habeas Corpus (R. 1) is denied.

ENTERED: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated: June 30, 2009**

---

[8] Petitioner argues that the appellate court "misstated facts" when it stated that Petitioner had been identified by a witness as one of the shooters. (R. 17, Pet'r Reply at 33.) However, the record supports the state court's factual finding. On December 18, 1993, after viewing a photo lineup, Ramos confirmed that Petitioner looked like the man who had fired a gun at her, but stated that "she would have to see him in person to be sure." (*See* R. 14, Record, Ex. B, Tr. at C159-60 (Ramos's testimony) & Ex. G, Tr. at A39-40 (officer testimony).) Perez also identified Willhite from a photo array as one of the shooters, and told officers that he recognized Petitioner because he and Willhite "always walked together in the neighborhood. Every time [Perez had] seen them they were walking together." (*Id.*, Ex. D, Tr. at D24-25.)